IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   JUL 3 1 2007   ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CV-07  3152

---------------------------------------------------- x

ELLIOT GREENBERG, Individually and On
Behalf of All Others Similarly Situated,

                        Plaintiff,

     vs.

AMERICAN HOME MORTGAGE
INVESTMENT CORP., MICHAEL
STRAUSS and STEPHEN A. HOZIE,

                      Defendants.

---------------------------------------------------- x

Civil Action No.

CLASS ACTION COMPLAINT
FOR VIOLATIONS OF
FEDERAL SECURITIES LAWS

**JURY TRIAL DEMANDED**

PLATT, I.

BOYLE, M.

Plaintiff has alleged the following based upon the investigation of plaintiff's counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by American Home Mortgage Investment Corp. ("American Home Mortgage" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company, and plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

### NATURE OF THE ACTION

1.     This is a securities class action on behalf of purchasers of the securities of American Home Mortgage between July 26, 2006 and July 27, 2007, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

### JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC") [17 C.F.R. §240.10b-5].

3.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and Section 27 of the Exchange Act [15 U.S.C. §78aa].

4.     Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391(b), as many of the acts and practices complained of herein occurred in substantial part in this District.

5.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

6.      Plaintiff Elliot Greenberg, as set forth in the accompanying certification, incorporated by reference herein, purchased the securities of American Home Mortgage at artificially inflated prices during the Class Period and has been damaged thereby.

7.      Defendant American Home Mortgage is a real estate investment trust (REIT), which engages in the investment and origination of residential mortgage loans in the United States. The Company is based in Melville, NY.

8.      (a)      Defendant Michael Strauss ("Strauss") served as American Home Mortgage's Chairman, Chief Executive Officer ("CEO") and President during the Class Period. Defendant Strauss is also a founder of American Home Mortgage.

(b)      Defendant Stephen A. Hozie ("Hozie") served as American Home Mortgage's Chief Financial Officer ("CFO") and Principal Accounting Officer during the Class Period.

(c)      Defendants Strauss and Hozie are collectively referred to herein as the "Individual Defendants."

9.      Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about the Company's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

- 2 -

10.     It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above. Each of the above officers of American Home Mortgage, by virtue of their high-level positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, growth, financial statements, and financial condition, as alleged herein.   Said defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

11.     As officers and controlling persons of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was, and is, traded on the New York Stock Exchange ("NYSE"), and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate promptly, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded common stock would be based upon truthful and accurate information.   The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

- 3 -

12.     The Individual Defendants participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with American Home Mortgage, each of the Individual Defendants had access to the adverse undisclosed information about American Home Mortgage's business prospects and financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about American Home Mortgage and its business issued or adopted by the Company materially false and misleading.

13.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

14.     Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of American Home Mortgage common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding American Home Mortgage's business, operations, management and the intrinsic value of American Home Mortgage common

- 4 -

stock; and (ii) caused plaintiff and other members of the Class to purchase American Home Mortgage common stock at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

15.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased the securities of American Home Mortgage during the Class Period, inclusive (the "Class") and who were damaged thereby.   Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

16.     The members of the Class are so numerous that joinder of all members is impracticable.   Throughout the Class Period, American Home Mortgage common shares were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by American Home Mortgage or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

17.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

18.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

- 5 -

19.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.   Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of American Home Mortgage; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

20.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.   Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.   There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

21.     Defendant American Home Mortgage is a real estate investment trust (REIT), which engages in the investment and origination of residential mortgage loans in the United States.   The Company primarily originates and sells securitized adjustable-rate mortgage loans, as well as engages in the sale of mortgage loans to institutional investors and servicing mortgage loans owned by others.

22.     The Class Period commences on July 26, 2006.   On that date, American Home Mortgage issued a press release announcing its financial results for the second quarter of 2006, the

period ending June 30, 2006. The Company reported revenues of $276.8 million and income of $72.4 million. Defendant Strauss commented on the results stating in pertinent part as follows:

> The second quarter of 2006 was highly successful for our company. During the quarter, our portfolio net interest income reached a record $33.9 million, while our production business experienced record originations, record market share, a strong gain on sale margin and improved warehouse income. During the quarter, we continued to execute our strategy of retaining a portion of our loan production for our investment portfolio, by adding $1.2 billion of loans to our portfolio at quarter-end. These loans are carried at cost, and are expected to enhance our future portfolio earnings. We also continued to adhere to our core risk mitigation strategies including targeting a duration-neutral "matched book," and purchasing mortgage insurance to protect against credit losses. Today approximately half of the loans we hold are insured, either through borrower or lender-paid mortgage insurance. In addition to these core risk mitigation strategies, we recently began hedging the value of our mortgage servicing assets against the possibility of declining interest rates.

> Our company is again reaffirming our annual earnings guidance of $4.85 to $5.15 per diluted share. Our earnings guidance is based on, among other factors, annual loan originations of $55 billion to $60 billion. I am very pleased to report that, based on our company's performance and prospects, the Board of Directors has again voted to increase the dividend policy for our common stockholders. The new policy is $1.01 per share per quarter, or $4.04 per share on an annualized basis. The increased dividend is expected to become effective for the dividend expected to be paid in October 2006.

23.     On October 26, 2006, American Home Mortgage issued a press release announcing its financial results for the third quarter of 2006, the period ending September 30, 2006. The Company reported revenue of $258.9 million and net earnings of $72 million. Defendant Strauss commented on the results stating in pertinent part as follows:

> I am pleased by our company's results during the third quarter. In particular, earnings per share were strong at $1.36, while dividends and book value per share continued to advance from second quarter levels. Our company's third quarter results were accomplished during a period that was particularly difficult for our industry; a period that included the adverse impacts of an inverted yield curve, falling national housing prices, reduced national loan originations, and servicing write-downs due to lower interest rates. These difficult conditions are reflected in American Home's third quarter results which include a significant mortgage servicing asset write-down, a lower although still constructive gain-on-sale margin, high credit expense for reserving necessitated by sharply higher delinquencies and loan repurchases, and finally, lower warehouse net interest due to a narrower spread between new loan yields and funding yields. These factors were offset in our company's third quarter

- 7 -

results however, by record portfolio net interest income, record loan production and record servicing and ancillary fee income, as well as by lower expenses in our loan production business. In addition, our company did not experience a loss in its mortgage-backed securities portfolio as had been the case in several of the previous quarters, but instead had a net portfolio gain of $3.4 million. I believe our company's strong results in this challenging environment illustrate the underlying earnings power of our businesses.

During the quarter, our company added $906.8 million of newly originated loans to its portfolio of loans held for investment. These loans are carried at their cost, have an unrecognized fair value in excess of cost of $15.5 million, and are projected to yield 7.01% over their estimated life. As investors know, one of our company's core strategies is to grow ongoing portfolio net interest income by increasing our holdings of self-originated loans benefited by a low cost basis.

Based on our third quarter results and our outlook for the fourth quarter, our company is reaffirming its 2006 earnings guidance of $4.85 to $5.15 per share, and its guidance for annual loan originations of $55 billion to $60 billion.

24.     On January 25, 2007, American Home Mortgage issued a press release announcing its financial results for the fourth quarter of 2006, the period ending December 30, 2006. The Company reported revenues of $257.7 million and net earnings of $64.7 million. Defendant Strauss commented on the results stating in pertinent part as follows:

The fourth quarter was highly successful for our company with earnings of $1.21 per diluted share. During the quarter, we added $1.0 billion of recently originated loans to our portfolio, which are carried at cost. Loan origination volume was a record $15.5 billion due to our company achieving a record market share of 2.48% of national originations. Net interest income was stable while our servicing portfolio produced record revenues. During the quarter, our company did however experience its highest delinquency related charges to date, which reduced our quarterly earnings.

The fourth quarter concluded a very successful year for our company, with earnings per diluted share reaching a record $4.96. By comparison, diluted earnings per share were $3.97 in 2005, $3.74 in 2004, $4.07 in 2003 and $2.65 in 2002*. A key financial goal for our company in 2007 is to continue our multi-year growth trend in earnings per share. During 2006, our company's return on average common equity was 22.7%, which surpassed our target of 20%, and compares favorably to 2005 when our adjusted return on average common equity was 19.7%. Also during 2006 our company originated $58.9 billion of loans compared to $45.3 billion in 2005. Finally, during 2006, our company reached a milestone as, for the first time; its revenues exceeded $1.0 billion.

In this earnings release, our company is providing 2007 earnings guidance of $5.40 to $5.70 per fully diluted share with the earnings per diluted share for each quarter in 2007 projected to be approximately 9% to 15% higher than for the comparable quarter in 2006. Our earnings guidance is based on stable net interest margins applied to a growing portfolio of loans held for investment, loan production of $68 billion to $74 billion, and a reduction in gain on sale margins of approximately 12 basis points. Lower gain on sale margins are expected in part because delinquency losses on loans held for sale, including losses due to repurchases, are projected to continue at high levels throughout 2007. Projections for continued high losses are based on our company's view that while there are signs that housing prices are starting to stabilize, future abatements in foreclosure activity will lag a recovery in the housing market. As a result, our 2007 earnings guidance anticipates a highly stressed credit environment.

Not included in our earnings guidance are potential benefits from new strategies that offer the possibility of higher portfolio income, increased loan production and reduced income tax expense. Our company will keep investors apprised if material benefits from these strategies become likely.

I am very pleased to announce that based on our company's results and prospects, our Board of Directors has voted to increase our company's dividend policy by $0.06 to $1.12 per share per quarter or $4.48 per share on an annualized basis. The new dividend policy is expected to take effect with our April dividend payment. Please note, however, that our company is not obligated to pay dividends until such dividends are declared by our Board of Directors, and our Board of Directors may change our company's dividend policy at any time without prior notice.

25. On March 6, 2007, American Home Mortgage issued a press release which purported to provide supplemental information on its loan portfolio. The Company purported to provide a chart detailing certain characteristics of its loan portfolio including product type regarding the FICO credit scores, the loan to value ratios and mortgage insurance for both its holdings and originations.

26. The statements referenced above in ¶¶22-25 were each materially false and misleading when made as they misrepresented the following material adverse facts which were known to the Defendants or recklessly disregarded by them:

(a) that the Company was experiencing an increasing level of loan delinquencies which was depressing its earnings;

(b)     that the Company was experiencing increasing difficulties in selling its loans and, therefore, was required to decrease prices, thereby reducing margins and profits; and

(c)     as a result of the foregoing, the Company was overstating its financial results by failing to write-down the value of certain of the loans in its portfolio as these loans had declined substantially in value.

27.     On April 6, 2007, American Home Mortgage issued a press release announcing that it expects lower income in the first quarter and full year 2007 than previously forecasted due to conditions in the secondary mortgage and mortgage-backed securities markets. Defendant Strauss commented on the announcement stating in pertinent part as follows:

> During March, conditions in the secondary mortgage and mortgage securities markets changed sharply. In particular, these markets were characterized by far few buyers offering materially lower prices, both for loan pools and for "AA", "A", "BBB" and residual mortgage securities. These changes had a significant, adverse impact on our Company's first quarter results, reducing our gain on sale revenue and causing mark-to-market losses in our portfolio. While the market may recover, and while we will attempt to restore our gain on sale margins by raising interest rates charged to consumers, our working assumption must be that current market conditions will persist and that our gain on sale margins will not recover through the balance of the year. Consequently, I am disappointed to report that our Company is lowering its full year earnings guidance and its dividend policy.

The Company also reported that "first quarter results will be adversely affected by lower gain on sale margins. As March progressed, loan pools offered for sale by the Company received relatively few bids at lower than expected prices. As a result, those loans originated by the Company in late February and during March earned lower gain on sale revenues than were anticipated" and "first quarter results will also be adversely affected by write-downs of its portfolio of low investment grade and residual securities. In particular, the Company's approximately $484 million of securities rated "AA", "A" or "BBB" will be written down to account for an unusually large widening in the first quarter of the spread over LIBOR at which these securities trade." Finally, the Company

reported that it was experiencing "high delinquency related charges due to the Company establishing additional reserves for increases in non-performing loans."

28.     On April 9, 2007, in response to the announcement, the price of American Home Mortgage common stock declined from $25.84 per share to $21.92 per share on extremely heavy trading volume and continued to decline to $19.55 per share on April 10, 2007.  Defendants, however, continued to conceal the scope of the problems that the Company was having with its portfolio of subprime loans and was failing to disclose the full extent of its exposure to the subprime market.

29.     On April 30, 2007, American Home Mortgage issued a press release announcing that it had sold 4,000,000 shares at $23.10 per share in a public offering.  In connection with the offering, on May 2, 2007, American Home Mortgage filed a prospectus supplement (the "Prospectus") relating to the offering.  The Prospectus failed to disclose the full extent of the financial difficulties facing the Company.

30.     On June 28, 2007, American Home Mortgage issued a press release announcing that it will take "substantial charges for credit-related expenses in the second quarter."  The Company reported that the increase in losses was related to its practice of extending a three month timely payment warranty that the Company granted to loan buyers who purchased stated income loans. Defendant Strauss commented on the announcement stating in pertinent part as follows:

> Our company's goal is to put the impact from the discontinued products behind us. A benefit of the substantial reserves we are establishing in the second quarter is that the discontinued product's impact on our future financial results is likely to diminish. As we put the impact from the discontinued products behind us, the positive contributions from our portfolio, mortgage origination franchise and loan servicing business will again drive our results. Altogether, the second quarter will be a period of "clean-up" as the impact from the discontinued products continues to wind down.

The Company further revealed that the charges to its second earnings will be "substantial" stating in pertinent part as follows:

> The Company's delinquency-related charges in the second quarter will be substantial. In addition, the Company expects that it will reclassify a portion of its other comprehensive loss. The reclassification will be charged to current quarter earnings, but will reduce other comprehensive loss by a like amount, and consequently will not affect the Company's equity. Altogether, the total amount of loss in the second quarter is expected to be contained. Specifically, the Company expects that its total stockholder's equity will actually be higher at the end of the second quarter compared to the first quarter of 2007.

31.     In response to this announcement, the price of American Home Mortgage stock declined from $20.91 per share to $18.38 per share on extremely heavy trading volume. Yet, Defendants continued to conceal the financial deterioration of the Company and its lack of liquidity.

32.     Starting around July 19, 2007, the price of American Home Mortgage stock began to decline in response to market speculation that the Company was close to losing its financing. American Home Mortgage stock declined from $13.59 per share on July 18, 2007, to $10.63 per share on July 19, 2007. In response to these rumors, American Home Mortgage's spokesperson Mary Feder publicly stated that "No warehouse lines have been pulled."

33.     Then, on July 27, 2007, after the close of the market, American Home Mortgage issued a press release announcing that its Board of Directors had determined to delay paying its dividend stating in pertinent part as follows:

> . . . its Board of Directors has decided to delay payment of its quarterly cash dividend on the Company's common stock and anticipates delaying payment of its quarterly cash dividends on its Series A Cumulative Redeemable Preferred Stock and Series B Cumulative Redeemable Preferred Stock in order to preserve liquidity until it obtains a better understanding of the impact that current market conditions in the mortgage industry and the broader credit market will have on the Company's balance sheet and overall liquidity. The disruption in the credit markets in the past few weeks has been unprecedented in the Company's experience and has caused major write-downs of its loan and security portfolios and consequently has caused significant margin calls with respect to its credit facilities.

34.     In response to this announcement, on July 30, 2007, the NYSE halted trading in American Home Mortgage stock before the market opened. In pre-market trading, the price of American Home Mortgage stock declined to approximately $6.39 per share from $10.47 per share.

35.     The market for American Home Mortgage's common stock was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, American Home Mortgage's common stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired American Home Mortgage common stock relying upon the integrity of the market price of American Home Mortgage's common stock and market information relating to American Home Mortgage, and have been damaged thereby.

36.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of American Home Mortgage's common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

37.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by plaintiff and other members of the Class. As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about American Home Mortgage's business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of American Home Mortgage and its business, prospects and operations, thus

- 13 -

causing the Company's common stock to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.

### Additional Scienter Allegations

38.    As alleged herein, Defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding American Home Mortgage, their control over, and/or receipt and/or modification of American Home Mortgage's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning American Home Mortgage, participated in the fraudulent scheme alleged herein.

### Applicability of Presumption of Reliance:
### Fraud on the Market Doctrine

39.    At all relevant times, the market for American Home Mortgage's common stock was an efficient market for the following reasons, among others:

(a)    American Home Mortgage stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)    As a regulated issuer, American Home Mortgage filed periodic public reports with the SEC and the NYSE;

- 14 -

(c)     American Home Mortgage regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     American Home Mortgage was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

40.     As a result of the foregoing, the market for American Home Mortgage's common stock promptly digested current information regarding American Home Mortgage from all publicly available sources and reflected such information in American Home Mortgage's stock price. Under these circumstances, all purchasers of American Home Mortgage's common stock during the Class Period suffered similar injury through their purchase of American Home Mortgage's common stock at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

41.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking

statements was made, the particular speaker knew that the particular forward-looking statement was

false, and/or the forward-looking statement was authorized and/or approved by an executive officer

of American Home Mortgage who knew that those statements were false when made.

## COUNT I

### Violation of Section 10(b) of
### the Exchange Act Against and Rule 10b-5
### Promulgated Thereunder Against All Defendants

42.     Plaintiff repeats and realleges each and every allegation contained above as if fully set

forth herein.

43.     During the Class Period, Defendants disseminated or approved the materially false

and misleading statements specified above, which they knew or deliberately disregarded were

misleading in that they contained misrepresentations and failed to disclose material facts necessary

in order to make the statements made, in light of the circumstances under which they were made, not

misleading.

44.     Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue

statements of material fact and/or omitted to state material facts necessary to make the statements not

misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud

and deceit upon the purchasers of the Company's common stock during the Class Period.

45.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of

the market, they paid artificially inflated prices for American Home Mortgage common stock.

Plaintiff and the Class would not have purchased American Home Mortgage common stock at the

prices they paid, or at all, if they had been aware that the market prices had been artificially and

falsely inflated by Defendants' misleading statements.

- 16 -

46.    As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of American Home Mortgage common stock during the Class Period.

## COUNT II

### Violation of Section 20(a) of
### the Exchange Act Against the Individual Defendants

47.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

48.    The Individual Defendants acted as controlling persons of American Home Mortgage within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By reason of their positions as officers and/or directors of American Home Mortgage, and their ownership of American Home Mortgage stock, the Individual Defendants had the power and authority to cause American Home Mortgage to engage in the wrongful conduct complained of herein.  By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.    Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B.    Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.    Such other and further relief as the Court may deem just and proper.

- 17 -

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED:  July 31, 2007

LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN (SR-7957)
DAVID ROSENFELD (DR-7564)


_____
SAMUEL H. RUDMAN

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

LAW OFFICES OF CURTIS V. TRINKO, LLP
16 West 46th Street, 7th Floor
New York, New York 10036
Tel: (212) 490-9550
Fax: (212) 986-0158

Attorneys for Plaintiff

I:\American Home Mortgage\Pleadings\CPT073107.doc

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

**I, ELLIOT GREENBERG,** hereby certify as follows:

1.      I have reviewed the proposed complaint to be filed on my behalf in the United States District Court for the Eastern District of New York, concerning American Home Mortgage Investment Corp. brought under the federal securities laws, and have authorized the filing of same.

2.      Plaintiff did not purchase, or otherwise acquire, the securities of American Home Mortgage Investment Corp. that are the subject of this action, at the direction of plaintiff's counsel, or in order to participate in any private action arising under the federal securities laws.

3.      I am willing to serve as a representative party on behalf of the class, and will provide testimony at a deposition and/or at trial, if necessary.

4.      Plaintiff's transactions in the securities that are the subject of this litigation during the class period set forth in the complaint are, as follows:

> a) Plaintiff purchased 1200 shares of American Home Mortgage Investment Corp. common stock on April 17, 2007 at $ 21.90 per share.

> b) Plaintiff still holds these shares.

5.      During the three years prior to the date hereof, plaintiff has not filed an action in which he has sought to serve, or has served, as a representative party for a class in any action filed under the federal securities laws.

6.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond his pro rata share of any recovery, or as ordered or approved by the Court, including the award to a representative of reasonable costs and expenses (including lost

wages) directly relating to the representation of the class.

     I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.  Executed this __26__ day of July , 2007 at Smithtown,  New York.


ELLIOT GREENBERG